# United States Court of Appeals
## For the First Circuit

No. 06-1026

ISRAEL BENITEZ-GARCIA; DAMARIS DIAZ; ISRAEL BENITEZ-DIAZ;
SONIA LAGUER-MORALES; SONIA I. DIAZ-LAGUER; NEFTALY CARRASQUILLO-
CARRASQUILLO; CARMEN MILAGROS AMARAL-LOPEZ; GIANNA M.
CARRASQUILLO-AMARAL; ESTHER HERNANDEZ-GARCIA; DRASKA MACHELLY
CASILLAS-HERNANDEZ; NELSON GONZALEZ; MILAGROS LABOY; MARIE ANN
GONZALEZ-LABOY; LUIS JAVIER ROSA-DAVILA; NATALIA ALISHA ROSA-
NIEVES; SONIA CRUZ-GONZALEZ; ELVIS ALEXIS MALDONADO-CRUZ; LUIS H.
MENDOZA-RODRIGUEZ; MARY LUZ MONTANEZ-SERRAN; LESLY ANN MENDOZA-
MONTANEZ; VICTOR MANUEL MARTINEZ-TORRES; BETTY VEGA-RIVERA;
VICTOR RAFAEL MARTINEZ-VEGA; BERNARD SANTIAGO; IVETTE S. DUCLERE;
BERNARD A. SANTIAGO-DUCLERE; LUIS R. SANTIAGO-TORRES; ARLENE J.
RUIZ-DIAZ; CELESTE CORAL SANTIAGO-RUIZ; ELIUDES CAMPS-MARCANO;
MARISOL HERNANDEZ-MILLAN; LEISHLA M. CAMPS-HERNANDEZ; JORGE M.
JIMENEZ-MARTINEZ; FRANCES L. CARRERO-ROMAN;
KRYST M. JIMENEZ-CARRERO,

Plaintiffs, Appellants,

v.

ADALBERTO GONZALEZ-VEGA; JANE DOE; CONJUGAL PARTNERSHIP GONZALEZ-
DOE; COMMONWEALTH OF PUERTO RICO, Represented by Hon. Sila Maria
Calderon, Governess of Puerto Rico; DEPARTMENT OF EDUCATION OF
THE COMMONWEALTH OF PUERTO RICO, Represented by Hon. Cesar Rey;
JOHN DOE; RICHARD ROE; A-Z INSURANCE CO.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

---

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

          Carlos  Rodríquez-García  and  Maza  &  Green  on  brief  for
appellants.
          Susana  I.  Peñagarícano-Brown,  Assistant  Solicitor  General,
Salvador  J.  Antonetti-Stutts,  Solicitor  General,  Mariana  Negrón-
Vargas,  Deputy  Solicitor  General,  and  Maite  D.  Oronoz-Rodríquez,
Deputy  Solicitor  General,  on  brief  for  appellees  Commonwealth  of
Puerto  Rico  and  the  Department  of  Education  of  the  Commonwealth  of
Puerto  Rico.

---

November 3, 2006

---

**LYNCH**, **Circuit Judge**.  By order dated November 16, 2005, the district court dismissed plaintiffs' civil rights action as a sanction for violations of three deadlines set in an oral Initial Scheduling Conference (ISC) discovery order.  The order of dismissal was entered despite the fact that under the district court's local rules, plaintiffs had at least until November 18, 2005 to respond to the defendants' motion requesting this drastic sanction.  The court then did not accept plaintiffs' motion for reconsideration in this very active case, as it denied plaintiffs permission to file a motion that exceeded the page limit in the local rules.  As best one can tell, the court never considered plaintiffs' explanation for their failure to meet the ISC deadlines.  On these and other facts presented, we reverse.

I.

On September 13, 2004, plaintiffs filed an action against the Commonwealth of Puerto Rico, its Department of Education, a particular high school teacher, and various officials and other parties, alleging that plaintiffs had been victims of gender discrimination, sexual harassment, and quid pro quo exchange of higher grades for sexual favors.  In the early months of the litigation, the district court granted a number of extensions to various defendants to file their answers, and then allowed supplemental answers asserting new defenses as late as July 19,

2005. Even so, two of the defendants did not timely file their answers and default judgment was initially entered against them.[1]

The case proceeded to discovery. By order dated March 18, 2005, the district court notified the parties that they should prepare for the ISC. The order informed the parties that all orders issued during the ISC would be effective immediately, even if the ISC order were not formally entered until a later date. The March 18, 2005 order also notified the parties that failure to comply with that order would "result in stiff penalties, including but not limited to the entry of default, the dismissal of one or more claims or defenses, barring of witnesses or evidence, or monetary sanctions."

The ISC order was not formally entered until August 24, 2005, though it was apparently orally communicated to the parties at the ISC on June 16, 2005. The written ISC order also provided that non-compliance might "result in the imposition of sanctions . . . includ[ing] the imposition of a fine, or the elimination of any of the allegations of the complaint, the answer, or any pleading." In the middle of discovery, on November 3, 2005, two of

---

[1] The default judgment was never formally lifted against defendant Department of Education, although it subsequently participated in the case throughout the litigation and even successfully moved to dismiss some of the claims against it. Defendant Adalberto Gonzalez-Vega also appears to have been participating in the litigation despite being in default; his motion to set aside the default was pending at the time the district court dismissed plaintiffs' claims.

-4-

the defendants filed a motion requesting that plaintiffs' case be dismissed with prejudice as a sanction for plaintiffs' failure to comply with the ISC order.

The court order dismissing the case, signed by the district judge on November 16, 2005, was entered before plaintiffs had filed a response to the defendants' motion. The district court stated it was dismissing the action <u>with</u> <u>prejudice</u> because plaintiffs had failed to meet three of four discovery deadlines in July and August of 2005. The three deadlines, listed under the heading "Preliminary Orders" in the ISC order, were: (1) that plaintiffs were to provide, by July 8, 2005, either the name of the person in charge of a previous investigation against the teacher co-defendant or copies of complaints previously filed against that co-defendant; (2) that plaintiffs' expert was to tender his report by July 26, 2005; and (3) that plaintiffs were to provide their medical records and Health Insurance Portability and Accountability Act (HIPAA) consent forms by August 17, 2005.[2] All three of these deadlines predated the written ISC order's formal date of entry.

The district court, citing <u>Damiani</u> v. <u>Rhode Island Hospital</u>, 704 F.2d 12, 17 (1st Cir. 1983), found that this was "a case of extreme misconduct that warrants the sanction of dismissal

_____

[2] The ISC order also set out a number of other deadlines. It set March 21, 2006 as the deadline for filing dispositive motions, June 21, 2006 as the date for the pre-trial conference, and June 28, 2006 as the trial date.

with prejudice" because the plaintiffs had: (1) violated discovery orders; (2) failed to seek consent; and (3) failed to seek approval for non-compliance based on a truly valid reason. The court did not order plaintiffs to show cause, and it noted that plaintiffs had not opposed the motion. The court order was entered on November 17, 2005 -- one day after the date it was signed by the district judge.

Plaintiffs filed a motion for reconsideration on November 28, 2005. Because the motion exceeded 25 pages in length, the limit set by the local rules, it was accompanied by a motion for leave to file an overlength document. Both motions were denied the next day, November 29, 2005. There is no indication that the district court ever reviewed the merits of the motion or gave the plaintiffs a later opportunity to file a conforming motion.

At the time the court dismissed the case for plaintiffs' failure to comply with the ISC deadlines there was a pending motion from the plaintiffs to amend the ISC order. This motion was filed on October 9, 2005 and was raised again in a filing on November 3, 2005. There was also activity by a previously defaulted defendant seeking to enter the case. And throughout discovery the plaintiffs had filed numerous motions to compel defendants to comply with discovery, arguing that the defendants were stalling and foot-dragging. At least some of plaintiffs' allegations apparently had merit: on August 9, 2005 the court granted the plaintiffs' motion

to compel defendants to produce certain documents, and it also partially granted plaintiffs' motion to quash several of the deposition notices on the grounds that the defendants had not provided notice to all parties.

## II.

A district court may dismiss an action for noncompliance with a discovery order. Fed. R. Civ. P. 37(b)(2)(C).[3] When a district court invokes this power, our review is for abuse of discretion. See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976) (per curiam); Bachier-Ortiz v. Colon-Mendoza, 331 F.3d 193, 194 (1st Cir. 2003) (per curiam).

The sanction imposed here was dismissal with prejudice, the harshest sanction, other than contempt, which may be visited on a party. It has been used where the plaintiff has failed to prosecute his case. See Link v. Wabash R.R. Co., 370 U.S. 626, 629 (1962); see also Pomales v. Celulares Telefonica, Inc., 342 F.3d 44, 48-49 (1st Cir. 2003) (reversing a dismissal with prejudice for lack of prosecution); Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 66-67 (1st Cir. 1999) (same). In that context, the sanction is reserved for cases of "extremely protracted inaction (measured in

---

[3] In addition to citing this rule, the district court also claimed authority under Fed. R. Civ. P. 41(b), which allows the court to dismiss an action "[f]or failure of the plaintiff to prosecute or to comply with . . . any order of court." For purposes of this appeal, we need not examine which of these rules provides proper authority for dismissal of an action for failure to comply with an ISC order.

years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance." Cosme-Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987). This case does not involve a failure to prosecute. Indeed, the plaintiffs zealously prosecuted the action. The docket sheet shows over 100 entries at the time of entry of dismissal.

Still, zealous prosecution is no shield against sanctions for violations of court discovery orders. Dismissal with prejudice for violation of such orders is well within the arsenal of the trial judge. See Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002) (noting that disobedience of a court order can constitute extreme misconduct warranting dismissal); Robson v. Hallenbeck, 81 F.3d 1, 4 (1st Cir. 1996) (explaining that successive violations of court scheduling orders can justify dismissal with prejudice, and admonishing parties who "treat scheduling orders as optional and [who] conduct trial preparations at their own convenience"); see also Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003).

Where dismissal with prejudice is involved, it has long been our rule that a case should not be dismissed with prejudice except "when a plaintiff's misconduct is particularly egregious or extreme." Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 107 (1st Cir. 1995); see also Tower Ventures, 296 F.3d at 46 (explaining that not "every breach of a scheduling order warrants"

-8-

dismissal with prejudice, and noting that we will not "rubber-stamp the use of dismissal as a sanction"). In addition, "fairness requires that some limits be placed on [the] use" of a sanction of this severity. Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075-76 (1st Cir. 1990). These fairness concerns encompass both the law's preference that cases be disposed of on the merits, see Pomales, 342 F.3d at 48, and procedural aspects such as notice and an opportunity to be heard, see Ortiz-Anglada, 183 F.3d at 67. Thus, our inquiry is into both the substance of the court's order and the procedure by which the sanction was imposed.

Our inquiry into sanctions orders is not a mechanical one, and our cases set forth a variety of important considerations:

> Among those commonly mentioned (this list is not complete) are the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions. . . . There is also a procedural dimension.

Robson, 81 F.3d at 2-3.

We look at the substance first. There is no pattern of the plaintiffs repeatedly flouting court orders. Cf., e.g., Crossman v. Raytheon Long Term Disability Plan, 316 F.3d 36, 39 & n.2 (1st Cir. 2002) (noting the importance generally of finding a pattern or series of disobedience and reversing an order of dismissal where all of the alleged infractions stemmed from

-9-

noncompliance with a single order). Defendants do not cite to us, and we have been unable to find, a case from this circuit sustaining a dismissal with prejudice imposed solely for a single allegation of noncompliance with a single (albeit multi-part) discovery order -- at least where that noncompliance was never brought to the plaintiffs' attention by the court prior to dismissing the case. Robson comes closest, but it involved the more serious violations of a variety of pre-trial deadlines on the eve of trial, which were brought to the court's attention on the morning of trial itself. See Robson, 81 F.3d at 2. Context makes those much more serious infractions than what is involved here. Also, in Robson we vacated the dismissal; the district court had not considered the validity of several proffered excuses and thus there was an insufficient basis to uphold the dismissal on appeal. See id. at 2-5.

At the time the defendants brought the motion for sanctions, the three deadlines had been violated by approximately four months, three months, and two and a half months, respectively. In Ortiz-Anglada, a delay of seven months was insufficient to warrant dismissal with prejudice. 183 F.3d at 66-67. In Pomales, a four-month delay "did not alone constitute misconduct sufficiently extreme to justify dismissal with prejudice." 342 F.3d at 49. The plaintiffs' delay here, albeit one that came without seeking prior consent, is not a case of extreme misconduct

-10-

warranting dismissal -- particularly in light of the pending motions from plaintiffs[4] and from the defaulted defendant seeking to reenter the case.  Further, there had been no motion to compel compliance.

Moreover, the district court does not appear to have considered whether a sanction as severe as dismissal with prejudice was needed or whether other sanctions might well have sufficed. Cf. Crossman, 316 F.3d at 39-40 (finding that the district court's failure to consider the adequacy of lesser sanctions contributed to a finding of abuse of discretion); cf. also Asociacion de Empleados del Instituto de Cultura Puertorriquena v. Rodgriquez-Morales, 538 F.2d 915, 917 (1st Cir. 1976).

Nor is it clear that the defendants suffered much, if any, prejudice from plaintiffs' delay; while defendants suggest that the documents not produced were "pertinent to the key issues of liability and damages," they have not explained how the delay has affected their ability to litigate these issues in the context of the broader schedule for the case.  In their motion for

---

[4] The portions of the ISC order that plaintiffs sought to amend in their pending motion do not appear to be the portions that the district court found they had disobeyed.  Nevertheless, the plaintiffs' motion did allege that the defendants were hampering discovery in this case, and in addition to asking for specific modifications, the plaintiffs also asked for "any order [the court] might see fit."  Cf. Enlace Mercantil Int'l, Inc. v. Senior Indus., Inc., 848 F.2d 315, 318 (1st Cir. 1988) (reversing a district court's dismissal when the record left open the possibility that plaintiff's delay resulted from waiting for the district court to rule on a pending and relevant motion).

sanctions, defendants made no allegations that they ever even requested the missing information from plaintiffs in the time between the deadline dates and the filing of their motion. Indeed, at the time the defendants moved for sanctions it was still nearly eight months before the trial date, and more than four and a half months before the court's deadline to submit dispositive motions. Cf. Figueroa-Ruiz v. Alegria, 896 F.2d 645, 649 (1st Cir. 1990) (noting that there was little prejudice from plaintiffs' delay when defendants' tactical position was unaffected).[5]

Turning to procedure, we think that the district court simply could not have weighed all of the appropriate factors here given the alacrity with which it dismissed the action. The district court noted that defendants' motion for sanctions went unopposed and that, as a result, the plaintiffs had not demonstrated good cause for their noncompliance. But under the district court's local rules the plaintiffs had at least until November 18, 2005 to file their objection.[6] The court did not wait

_____

[5] It is true that in Robson we stated that "[r]epeated disobedience of a scheduling order is inherently prejudicial." 81 F.3d at 4. Robson did not, however, explain how much prejudice results from such violations. Moreover, the violations in Robson occurred on the eve of trial and appear not to have been brought to the court's attention until the morning of trial itself. Id. at 2. The inherent prejudice in Robson was thus far more obvious from the record than is the case here.

[6] Under D.P.R. R. 7.1(b), an opposing party is deemed to have waived objection to a motion unless he files a written objection within ten days. D.P.R. R. 7.1(d) explains that these ten days are calculated according to Fed. R. Civ. P. 6(a), which in turn

for the expiration of this deadline.[7]  When the plaintiffs sought to present their argument in an oversize motion for reconsideration, along with a motion for permission to extend the length, both were denied without comment.  It appears the district court never considered plaintiffs' explanations for why their

---

excludes Saturdays, Sundays, and legal holidays when a rule's time period is less than 11 days.  Excluding weekends and the Veterans Day holiday, plaintiffs' response to the motion filed on November 3, 2005 was due at least no earlier than November 18, 2005.  In fact, plaintiffs may even have been entitled to several more days beyond that.  The record indicates that defendants' motion for sanctions was filed electronically using the CM/ECF system, and that service was made on opposing counsel through this system. Under the district court's local rules, it appears that this mechanism of service entitled plaintiffs to an additional three days.  See D.P.R. R. 5.1(e); see also Fed. R. Civ. P. 6(e).

[7] The district court may have been relying on a mistaken docket entry, made at the bottom of the entry for defendants' motion for sanctions, indicating that a response was due on November 16, 2005. Nevertheless, we can find nothing in the record indicating that this deadline was entered as a formal order of the court, and in the absence of such the district court's local rules were controlling.

failures should be excused[8] and why a less drastic remedy would suffice.

"Ordinarily, the plaintiff is given an opportunity to explain [his noncompliance] or argue for a lesser penalty . . . ." Robson, 81 F.3d at 3.[9] Cf. Damiani, 704 F.2d at 17 (noting that prior to dismissing the case, the district court held two hearings at which it gave plaintiffs' counsel an opportunity to argue against dismissal). That was not done here.

_____

[8] The Supreme Court has held that the term "excusable neglect" should be interpreted flexibly. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 389 (1993). It instructed the lower courts to engage in an equitable balancing test, looking to all relevant circumstances, including the degree of prejudice to the adverse party, the potential impact on judicial proceedings, and the reasons for delay. Id. at 395. This court has held that Pioneer was meant to apply more broadly, in other circumstances in which the party who missed a deadline argues excusable neglect. See Pratt v. Philbrook, 109 F.3d 18, 19-20 (1st Cir. 1997); see also Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5 (1st Cir. 2001) (applying Pioneer to Fed. R. App. P. 4(a)); Hospital del Maestro v. NLRB, 263 F.3d 173, 174-75 & n.1 (1st Cir. 2001) (applying Pioneer to NLRB rules).

[9] To the extent the Supreme Court upheld dismissal in Link without notice, that case is distinguishable. There, at the time of the dismissal the district court had already been appraised of the party's reason for noncompliance. See Link, 376 U.S. at 628. Also, there is no indication in Link that the district court was acting contrary to local rules. See id. at 633 n.8. Also distinguishable is Cintron-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522 (1st Cir. 2002), which upheld a sua sponte dismissal. In that case there was a lengthy silence from the plaintiff and little indication that she was even actively participating in the litigation. Id. at 524-25. The district court also warned the plaintiff that it was specifically considering dismissal based on her conduct in the litigation thus far; the plaintiff did not take this opportunity to present her side to the court. See id. at 526.

-14-

The order entering the dismissal with prejudice was an abuse of discretion and is reversed.

The judgment of the district court is <u>reversed</u> and the case is <u>remanded</u> for further proceedings consistent with this opinion.