# United States Court of Appeals
## For the First Circuit

No. 06-1035

JAMES J. MALOT; CAROLINE J. CHANTRY;
CONJUGAL PARTNERSHIP MALOT-CHANTRY,

Plaintiffs, Appellants,

v.

DORADO BEACH COTTAGES ASSOCIATES S. EN C. POR A., S.E.;
P.T. COTTAGES, INC.; DANIEL W. SHELLEY; SONIA SHELLEY;
CONJUGAL PARTNERSHIP SHELLEY-SHELLEY; A.B. AND C. COMPANIES;
JOHN DOE; RICHARD DOE; JENNY DOE; INSURANCE COMPANY A, B, AND C,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Antonio Cuevas-Delgado and Cuevas Kuinlam & Bermúdez, on brief
for appellants.
José Luis Novas-Debién, on brief for appellees.

February 23, 2007

**TORRUELLA, Circuit Judge**. Plaintiffs-appellants James J. Malot ("Malot"), his wife, Caroline J. Chantry ("Chantry"), and their conjugal partnership (collectively "Plaintiffs") brought this breach of contract action against Dorado Beach Cottages Associates and others (collectively "Defendants") following a failed real estate deal. The district court dismissed Plaintiffs' case for disregard of the court's discovery and management orders and for failure to prosecute. Plaintiffs appeal the dismissal on the grounds that dismissal with prejudice was too harsh a penalty under the circumstances and that the district court abused its discretion in dismissing the complaint as to all plaintiffs when only one of the plaintiffs failed to comply with a discovery order. After careful consideration, we reverse the district court's dismissal of Plaintiffs' claims and remand for further proceedings.

## I. Background and Prior Proceedings

In 1994, Plaintiffs entered into an agreement with Dorado Beach Cottages Associates to participate in a real estate development project in the Municipality of Dorado in Puerto Rico. Plaintiffs later moved to California. A dispute arose between the parties and Plaintiffs filed suit for breach of contract on February 26, 2003 in the District of Puerto Rico.[1]  On January 27,

---

[1]  Defendants filed a counterclaim, which the district court eventually dismissed without prejudice pursuant to Defendants' request.

-2-

2004, the district court held an initial scheduling conference,[2] setting a cut-off date of November 1, 2004 for all discovery proceedings and requiring that Plaintiffs be available to be deposed in Puerto Rico, since they chose Puerto Rico as the forum. The scheduling order also indicated that the court would "not hesitate to impose sanctions should obstinacy be present."

On March 12, 2004, Plaintiffs requested an extension of time until April 4 to answer interrogatories, which were originally due on March 25. They failed to meet the self-imposed deadline, filing their answers on May 24. During the following months and on its own initiative, the district court extended the cut-off date for discovery twice, first to December 15, 2004, and then to January 14, 2005, in an attempt to encourage settlement.

On September 21, 2004, after two failed attempts to depose Plaintiffs, Defendants filed a motion to compel Plaintiffs to appear for their depositions, and also requested the imposition of sanctions of reasonable attorney fees. In response, Plaintiffs explained that they had not been available to attend the suggested dates of deposition due to the "very tight schedule in their personal lives," given that Chantry was a pediatrician, a resident teacher at the Medical Center of the University of California, and in charge of research at the university, and Malot was involved in

---

[2] This scheduling conference was held after the court imposed sanctions on the defendants for failing to appear at the originally scheduled conference.

another lawsuit in California. Plaintiffs suggested deposition dates of the morning of October 20 for Chantry and all day October 21 for Malot. On October 3, the district court set the dates for Plaintiffs' depositions for October 20, 21, 22, and if necessary, 23. The district court denied without prejudice Defendants' request for attorneys fees "in connection with plaintiffs [sic] obstinate refusal to appear to the taking of their depositions," but warned Plaintiffs that "the Court will not hesitate to impose sanctions, as a consequence of failure to comply with this order."

Chantry appeared for only two hours on October 20, but offered to continue the deposition on October 21 from Orlando, Florida via videoconferencing at her own expense. Defendants refused the offer, citing the district court's clear requirement, stated in both the initial scheduling conference and the October 3 order, that Plaintiffs should be available for depositions in the forum that they themselves selected. Instead, the parties agreed that Chantry would return to Puerto Rico to conclude her deposition on November 23. Malot completed his deposition during the specified dates.

During Malot's deposition on October 22 and by letter to defense counsel dated November 9, Plaintiffs informed Defendants that despite their previous agreement, Chantry was not available to come to Puerto Rico on November 23 because the university

hospital's policy required at least six weeks' notice to cancel scheduled appointments, and she had appointments scheduled for that day. Plaintiffs again offered to continue the deposition by video instead. Defense counsel indicated at Malot's deposition that "[a]s things stand" the parties had an agreement to complete Chantry's deposition in Puerto Rico on November 23, but that he would consult with his client regarding Plaintiffs' offer and get back to Plaintiffs' counsel. Defendants never responded further to Plaintiffs' request, and Chantry did not appear in Puerto Rico on November 23.

On January 12, 2005, two days before the discovery deadline, the district court granted Plaintiffs' request to extend discovery once again, this time to February 14. The court warned the parties that no further extensions would be granted and advised Plaintiffs' counsel that Chantry had to complete her deposition in Puerto Rico before this date. Notwithstanding the warning, two days before the deadline, Plaintiffs again requested an extension, which would have been the fifth extension of the discovery deadline. The district court denied the request. Chantry failed to appear to complete her deposition.

On March 1, 2005, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 37(b)(2).[3] On July 28,

---

[3] Plaintiffs' response was due on March 14, but on March 4, Plaintiffs requested an extension until April 4, which the district court "reluctantly" granted.

2005, the district court dismissed Plaintiffs' case with prejudice for failure to obey a discovery order[4] and failure to prosecute.[5] The court acknowledged that

> "[d]ismissal with prejudice is a harsh sanction, . . . which should only be employed when a Plaintiffs' [sic] misconduct has been extreme, . . . and only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." However, the Court explicitly makes such a finding. Plaintiffs have failed to prosecute their case and have <u>persistently</u> failed to heed to Court's orders <u>even after receiving a forewarning as to sanctions</u>.

(alterations and emphasis in original) (quoting <u>Estate of Solís-Rivera</u> v. <u>United States</u>, 993 F.2d 1, 2 (1st Cir. 1993)).

On August 8, 2005, Plaintiffs moved for reconsideration, but the district court denied the motion and reaffirmed its previous order dismissing Plaintiffs' case. The district court entered judgment on November 15, 2005. This appeal followed.

## II. Discussion

We review dismissals under both Rule 37(b)(2) and Rule 41(b) for abuse of discretion. <u>Angulo-Alvarez</u> v. <u>Aponte de la</u>

---

[4] Rule 37(b)(2) states in relevant part, "If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . . (C) An order . . . dismissing the action . . . ." Fed. R. Civ. P. 37(b)(2).

[5] Rule 41(b) provides, "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." Fed. R. Civ. P. 41(b).

Torre, 170 F.3d 246, 251 (1st Cir. 1999). Claims that a court has abused its discretion in dismissing a case for failure to adhere to discovery orders or for failure to prosecute have "not received a sympathetic ear from us." Damiani v. R.I. Hosp., 704 F.2d 12, 17 (1st Cir. 1983) (collecting cases). Nevertheless, we must fairly balance the court's venerable authority over case management with the larger concerns of justice, including the strong presumption in favor of deciding cases on the merits. Torres-Vargas v. Pereira, 431 F.3d 389, 392 (1st Cir. 2005); Batiz Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002).

The appropriateness of a particular sanction thus depends on the circumstances of the case. Torres-Vargas, 431 F.3d at 392. In particular, as the district court noted, "[d]ismissal with prejudice is a harsh sanction, which should be employed only when a plaintiff's misconduct has been extreme and only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." Estate of Solís-Rivera, 993 F.2d at 2 (emphasis, citations, and internal quotation marks omitted).

In Benítez-García v. González-Vega, a recent case very similar to the one before us, we reiterated a non-exclusive list of substantive factors to consider when reviewing sanctions orders: "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the

misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." 468 F.3d 1, 5 (1st Cir. 2006) (quoting Robson v. Hallenbeck, 81 F.3d 1, 2-3 (1st Cir. 1996)).  We also noted a procedural dimension to our review as well, which addresses concerns such as notice, opportunity to be heard, and the court's explanation for its choice of sanction.  Id. at 5-7; Robson, 81 F.3d at 3.

The first few factors lend themselves to a single discussion.  Without a doubt, the disregard of court orders qualifies as extreme behavior, and we do not take such insolence lightly.  E.g., Torres-Vargas, 431 F.3d at 393.  At the same time, we have explained that "not . . . every breach of a scheduling order warrants dismissal."  Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002).  In fact, we recently noted that we were unable to find a case in this circuit in which we had upheld a dismissal with prejudice based on a single instance of noncompliance with a discovery order.  Benítez-García, 468 F.3d at 5.

At first glance, the circumstances of this case present a closer call than we faced in Benítez-García, where we found "no pattern of the plaintiffs repeatedly flouting court orders."  Id. Here, the plaintiffs have evinced a pattern of delay, which clearly -- and understandably -- antagonized the district court.  They repeatedly requested, and were granted, extensions and missed

court- and self-imposed deadlines.  The district court also observed that Plaintiffs had "obstinately" failed to complete their depositions.

In context, however, the delay was not as severe as the district court implied.  Although the original cut-off date for discovery was November 1, the district court itself extended the discovery deadline to January 14 to encourage settlement negotiations.  In order to complete Chantry's deposition, Plaintiffs first requested and were granted an extension of one month; their second request for an extension, which was denied, contemplated a March 15 deadline.  If the extension had been granted, the total delay caused by Plaintiffs in relation to completing discovery would only have been two months.  We tend to reserve dismissal with prejudice for delays measured in years, see Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987) (collecting cases), while reversing dismissals for conduct resulting in delays of merely a few months.  Pomales v. Celulares Telefónica, Inc., 342 F.3d 44, 48 (1st Cir. 2003); see also Benítez-García, 468 F.3d at 5.

More importantly, perhaps, Plaintiffs offered legitimate reasons for their failure to complete their depositions on the dates initially arranged by Defendants.  Chantry also advised both the court and Defendants that she would have only one morning during the scheduled deposition dates in October.  Although she

agreed to a date in November to complete the deposition, she promptly informed Defendants of her inability to do so to.

Furthermore, Chantry attempted on multiple occasions to comply with the discovery order in question by completing her deposition via teleconference. The district court's insistence that Plaintiffs complete their depositions in person in Puerto Rico seems somewhat inconsistent with the same court's haste to complete discovery. While we express no opinion on the reasonableness of the district court's requirement, we note that Plaintiffs made concrete efforts to comply with the court's discovery orders and find no evidence of deliberate misconduct.

The prejudice factor also weighs in Plaintiffs' favor. Both sides contributed to the contentiousness and lethargic pace of the discovery process. As noted above, the defense was sanctioned for failing to attend the first scheduling conference. Defendants were also uncooperative and unresponsive with regard to Plaintiffs' attempts to comply with the court's schedule. The only prejudice to Defendants -- or to the court, for that matter -- is their loss of time, which we explained above was not proportionate to the sanction imposed. No one has pointed to any reason why the relatively short delay would affect Defendants' ability to litigate the case. See Benítez-García, 468 F.3d at 6.

The final substantive factor relevant here is the adequacy of lesser sanctions, which in this case is inextricably

-10-

related to the procedural dimension of our review. Rule 37(b) provides the district court with a veritable arsenal of sanctions, including designating certain facts as established, awarding attorney's fees, and holding the disobedient party in contempt. The district court gave no explanation for its conclusion that any lesser sanction would be inappropriate, see Robson, 81 F.3d at 3 ("The presence or absence of an explanation by the district court may also be a factor [in our review of sanctions]."), and we find no support for this conclusion in the procedural record. The court did not attempt to exhaust its milder options, nor did it first warn Plaintiffs that they might face dismissal with prejudice. HMG Property Investors, Inc. v. Parque Indus. Río Cañas, Inc., 847 F.2d 908, 918 (1st Cir. 1988) ("[T]he law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal.").

Although prior notice is not a prerequisite to dismissal with prejudice, it is an important consideration. See Robson, 81 F.3d at 3 ("[C]ounsel's disregard of a prior warning from the court exacerbates the offense, and the lack of warning sometimes mitigates it."). Here, the parties were forewarned in the initial scheduling order that their obstinacy could result in sanctions. The district court again specifically warned Plaintiffs that it

-11-

would not hesitate to impose sanctions for noncompliance with its order scheduling deposition dates. This latter warning, however, occurred in the context of denying attorney's fees to Defendants in relation to their motion to compel Plaintiffs' depositions. Despite these warnings, Plaintiffs could not have had realistic notice that they faced the harsh sanction of dismissal with prejudice. As discussed above, they attempted to comply with court-ordered deadlines and their intransigence had otherwise minimal consequences to Defendants and the court.

## III. Conclusion

While we do not condone the disregard of a court order in this or any case, we must also act to protect the fairness of the judicial process. In this case, we are compelled to conclude that the district court abused its discretion in dismissing the Plaintiffs' case with prejudice. Accordingly, we need not reach Plaintiffs' second argument regarding the dismissal against all plaintiffs for one plaintiff's misconduct.

For the reasons stated above, we reverse the district court's dismissal and remand for further proceedings. We express no opinion regarding otherwise appropriate sanctions for Plaintiffs' violation of the court's prior discovery orders. We further note that Plaintiffs have now been suitably warned of the range of sanctions available to the district court should they

disregard the court's authority to manage its schedule in the future.

**<u>Reversed</u>**.